IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 1, 2022

**CLARE WEST ET AL. v. WAYNE AKARD**

**Appeal from the Circuit Court for Knox County**
**No. 2-228-20      William T. Ailor, Judge**

_____

**No. E2021-00962-COA-R3-CV**

_____

In this landlord-tenant dispute, the circuit court concluded that the landlord violated the Uniform Residential Landlord and Tenant Act ("Landlord/Tenant Act"), Tenn. Code Ann. §§ 66-28-101 to -522, and awarded the tenants $3,000 in compensatory damages and $25,000 in punitive damages. The landlord appealed the punitive damages award. Because the landlord failed to file either a transcript or statement of the evidence, we conclusively presume that the record would have supported an award of punitive damages, and we affirm the circuit court's judgment as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

Wayne Akard, Knoxville, Tennessee, pro se.

Matthew D. Barocas, Nashville, Tennessee, for the appellees, Clare West and Frederick West.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute between a landlord and his tenants. Because the record contains no transcript of evidence or statement of the evidence, the facts recounted herein are taken from the pleadings, exhibits, and orders provided in the technical record.

On August 6, 2019, Wayne Akard ("Landlord") entered into an agreement to lease his real property located at 123 Henley Road, Oak Ridge, Tennessee to Fred and Clare

West (collectively, "Tenants"). Approximately three weeks prior to leasing the property to Tenants, Landlord made some improvements to the house's basement, including adding a bathroom with a toilet, shower, and sink. He failed to obtain permits for these improvements.

The one-page lease agreement executed by the parties included a provision about maintenance of the property that stated: "[Tenants] shall be responsible for minor routine maintenance of the house and grounds. . . . Any major repairs arising from the normal operation of the house shall [be] the responsibility of [Landlord]." This provision became of paramount importance because Tenants began experiencing plumbing issues within the first month of living in the home, specifically water flowing into the basement. Initially, the parties maintained an amicable relationship and cooperated with each other to make the necessary repairs. The issue persisted through April 2020, and Landlord repeatedly attempted to resolve the problem by hiring people to perform repairs. These attempts did not resolve the issue, however, and Tenants became concerned after some mold was discovered on a section of the basement floor. Thus, two mold inspections were performed. Under both inspections, a reading of mold levels above 5,000 could indicate an issue for occupants of the home. The first test showed a level of 100,000, but the second test, which occurred approximately a week after the first test, showed that the mold levels significantly decreased to 10,000.

On April 13, 2020, Mr. West, frustrated with the situation, reported the on-going plumbing issues to Oak Ridge Codes Enforcement ("Codes"). After conducting an investigation, Codes issued a violation to Landlord for not obtaining permits for the bathroom addition in the basement and found the following problems with that bathroom: (1) "[t]hat the shower drain was not properly vented," (2) "[t]he slope was not proper on the piping, causing slow drainage," (3) "[t]he kitchen sink was piped into the floor drain [in the basement bathroom] and caulked around," and (4) "the toilet had a 2-inch drain, and a 3-inch drain was required by Codes."[1] Once Codes became involved, the parties' relationship deteriorated considerably, and they were no longer able to cooperate to resolve the plumbing issues.

For approximately two weeks after April 13, 2020, Tenants did not stay at the property due to their concerns about mold in the home. At some point during this time period, however, Tenants visited the property and discovered a rental truck and Landlord ordering movers to pack-up and haul away Tenants' belongings. Tenants intercepted the movers and directed them to take their belongings to a storage locker under Tenants' names. Unfortunately, Tenants did not arrive in time to stop Landlord from towing one of their vehicles from the property.

---

[1] These quotes are from the trial court's oral ruling given at the end of trial describing the testimony of Lisa Crumpley, an employee of Codes.

On May 11, 2020, Tenants filed a civil summons with the general sessions court in Knox County seeking damages for breach of contract and various violations of the Landlord/Tenant Act. Landlord filed an answer and counter-civil summons on June 4, 2020, seeking damages for breach of contract, "Reckless Act of Aggression," "Charade," and "Extortion." The general sessions court heard the matter on July 13, 2020, and entered a judgment dismissing Landlord's claims and awarding Tenants $34,000 ($25,000 in compensatory damages and $9,000 in attorney fees). Landlord appealed to the Circuit Court for Knox County.

Tenants filed their complaint in the circuit court, again alleging breach of contract and several violations of the Landlord/Tenant Act, including the unauthorized towing of a vehicle under Tenn. Code Ann. § 66-28-519. They sought both compensatory and punitive damages. Landlord filed an answer and counter-complaint alleging breach of contract.

The circuit court conducted a two-day bench trial of the matter during which it heard testimony from several witnesses, including Ms. West, Mr. West, and Landlord. In regard to Landlord's unauthorized towing of Tenants' vehicle, the court admitted into evidence as Exhibit Z the following venomous email from Landlord to Mr. West:

> You claim no malice.... bulls[**]t[.]
> You claimed you were delighted you were going to cost me over $4000 solely from
> Your INSANE call to Codes when you knew or nobody would ever Benefit from what I'm having to do. You didn't bother to
> hide your delight. I guess you will be even more DELIGHTED to learn that with electrical craziness thrown in that will
> probably jump to near $7000.
>
> You ACCUSE ME (with obvious malice) OF STEALING YOUR CAR and attempting to STEAL YOUR FRIDGE[.] You KNOW DAMN WELL I DONT STEAL FROM ANYONE and you sure as hell don't own anything I want. I tried to tell you I did in fact have a reason for a separate destination for the Freezer and the rest of your stuff. It was WITH MALICE THAT I WANTED TO MESS YOU WITH YOUR HEAD. THE CAR if you ever missed it was a different case from everything else. If you asked where it was, I would have told you so you could have redeemed it before storage costs got any larger. Everything else is a different story. I would have enjoyed watching you squirm while trying to find out it[s] whereabouts. I would have told you it was in VARIOUS PLACES (actually only 2). I would have told you I didn't even HAVE CONTROL OVER ANY OF IT which would have been true. The storage facility was to be in my daughters married name in case you went hunting for one in my name. The freezer would have been at another rental house in the garage. Since I could not get into that garage, I

- 3 -

had ZERO CONTRLL over FREEZER. The keys to the lock on the storage unit would have been placed in the freezer, giving renter lady COMPLETE CONTROL over storage unit and I would NOT HAVE CONTROL OVER ANY OF IT. I (with admitted malice) would have delighted in watching u squirm and go apes[**]t over trying to find your stuff.

Did you wonder why your pocket cop (who you obviously have snowed by your lies about hazards and danger, so he treats me like a criminal) said (falsely) if I took stuff out of house it would be stealing, but sending the car to storage was not stealing and told you cost of redeeming it would be yours. Car WASNT STEALING, and other stuff wasn't either. Cop knows it, you know it as well as I know it, but you just HAD TO CALL ME A TH[IE]F (but with no malice.... yeah sure).

On April 16, 2021, the circuit court entered an order dismissing Landlord's counter-complaint and finding that Tenants failed to prove all of their claims except the claim for Landlord's unauthorized towing of their vehicle. The court awarded Tenants $3,000 in compensatory damages ($2,850 for the return of their security deposit for the lease and $150 for damages caused by the unauthorized towing of the vehicle) and $25,000 in punitive damages, for a total of $28,000. The court's order incorporated by reference an attached transcript of its oral ruling, in which it made very specific findings of fact regarding the witnesses' credibility that influenced the court's decision: (1) Ms. West was credible, (2) Mr. West was "less credible," and (3) Landlord had "very little credibility" because his actions during trial "show[ed] a lack of self-respect, a lack of respect for authority, and a lack of respect for anybody who disagrees with him."

The court also made the following specific findings regarding Landlord's unauthorized towing of Tenants' vehicle under Tenn. Code Ann. § 66-28-519:

> [Landlord] has clearly violated the provision of this statute.
> This statute reads as follows: "A landlord may have the following vehicles towed or otherwise removed from real property leased or rented by such landlord for residential purposes upon giving a ten-day written notice by posting the same upon the subject vehicle."
> There is no proof in the record that [Landlord] gave any kind of written notice before he had the vehicle towed. Therefore, [Tenants] are entitled to recover damages under this provision of the Residential Landlord/Tenant Act.

Landlord claimed that he was entitled to remove the vehicle from the premises because Tenants abandoned the property. The court rejected this argument:

[Tenn. Code Ann. §] 66-28-405 defines "Abandonment" as follows:

"The tenant's unexplained or extended absence from the premises for 30 days or more without payment of rent as due shall be prima facie evidence of abandonment."

There is no evidence that [Tenants] w[ere] gone for 30 days without payment of rent. The uncontroverted proof is that [Tenants] were current on their lease.

Based on the proof in the record, [Tenants] did not abandon the property under the statute.

After concluding that Tenants were entitled to damages for Landlord's violation of the Landlord/Tenant Act, the court considered Tenants' request for punitive damages and stated, "It is clear from exhibits and the testimony of [Landlord] himself that this was an attempt to retaliate against [Tenants]." Thus, the court concluded that Tenants should receive punitive damages and provided the following findings as support for its decision:

Punitive Damages. The Court finds by clear and convincing evidence, taking into consideration all of the actions of [Landlord], that his actions were clearly intentional, they were reckless, and they were malicious.

The e-mail that was sent by [Landlord] . . . clearly indicates that [Landlord] did what he did to spite [Tenants], and it was his intention to inflict as much damage as he possibly could with regard to [Tenants] for their actions.

Punitive damages may be considered if, and only if, the plaintiff has shown by clear and convincing evidence that the defendant has acted intentionally, recklessly, maliciously, or fraudulently.

Clear and convincing evidence is a different and higher standard than a preponderance of the evidence, and it means that the defendant's wrongs, if any, must be so clearly shown, that there is no serious or substantial doubt the correctness of the conclusion drawn from the evidence.

A person ac[ts] intentionally when it is the person's purpose or desire to do a wrongful act or to cause the result.

It is clear in this Court's mind that that was done by [Landlord]. A person acts recklessly when the person is aware of, but consciously disregards a substantial and unjustifiable risk of injury or damage to another. Disregarding the risk must be a gross deviation from the standard of care that an ordinary person would use under all of the circumstances.

This Court is convinced by clear and convincing evidence again that [Landlord] acted in a reckless manner towards [Tenants].

A person acts maliciously when a person is motivated by ill-will, hatred, or personal spite.

Again, the e-mail sent by [Landlord] in this case shows, by clear and convincing evidence, that [Landlord] was acting maliciously with ill-will or personal spite—and probably hatred—toward [Tenants].

. . . .

It is clear to this Court that [Landlord] does not like it when people disagree with him.

It is clear that he was not happy that Codes told him that their Codes required different remedies than what he wanted to do.

It was clear that he was unhappy with [Tenants].

He made several statements with regard to the fact that this action against him and the other actions by calling Codes was something that he was unhappy with.

Landlord timely appealed. His appellate brief fails to state a clear issue for our review, but we discern that he raises the following issue: whether the circuit court erred in concluding that clear and convincing evidence supported an award of punitive damages[2] to Tenants. Tenants also raise one issue: whether they should be awarded their attorney fees incurred on appeal.

ANALYSIS

I. Punitive Damages.

Landlord argues that the circuit court should not have awarded punitive damages because Tenants failed to introduce evidence at trial establishing by clear and convincing evidence that they were entitled to such damages. According to Landlord, the circuit court's factual findings on this matter were "lies" and misstatements of the evidence actually presented at trial.

Courts award punitive damages to "'punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him.'" *Goff v. Elmo Greer & Sons Constr. Co., Inc.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Huckeby v. Spangler*, 563 S.W.2d 555, 558-59 (Tenn. 1978)). Therefore, punitive damages are "appropriate only in the most egregious cases," and an order "imposing such damages must be supported by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly." *Id.* (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)). Our Supreme Court has defined clear and convincing evidence as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges*, 833 S.W.2d at 901 n.3. "In other words, the evidence must be such that the truth of the facts asserted be 'highly

---

[2] Landlord expressly stated in his brief that he is not challenging the compensatory damages awarded by the circuit court.

probable.'"  *Goff*, 297 S.W.3d at 187 (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005)).

The punitive damages at issue in this case were awarded in a bench trial.  Thus, in reviewing the record to determine whether Tenants proved by clear and convincing evidence that Landlord committed malicious, intentional, or reckless acts, we review the circuit court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise.  TENN. R. APP. P. 13(d); *Chandler v. Chandler*, No. W2010-01503-COA-R3-CV, 2012 WL 2393698, at \*5 (Tenn. Ct. App. June 26, 2012). We review the circuit court's conclusions of law de novo without a presumption of correctness.  *Chandler*, 2012 WL 2393698, at \*5.

Before addressing Landlord's punitive damages issue, we must note that he is pro se in this appeal.[3]  We have stated the following principles about pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts.  The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system.  However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003).  Additionally, we allow pro se litigants some leniency in preparing their briefs by applying less exacting standards than those applied to briefs drafted by lawyers.  *Young*, 130 S.W.3d at 63.  Tenants assert that Landlord has waived the punitive damages issue because he failed to comply with the Tennessee Rules of Appellate Procedure.  Indeed, a review of Landlord's appellate brief and the record reveals several deficiencies in this regard.

We begin with Landlord's failure to comply with this Court's briefing requirements. Tennessee Rule of Appellate Procedure 27 governs the content of appellate briefs.

---

[3] In his appellate brief, Landlord explains that he consulted nine different lawyers but none of them wished to represent him on appeal.  He claimed that an attorney was eventually recommended to him by the local bar association, and that attorney accepted the case.  However, the attorney soon withdrew from representing Landlord.  As Landlord explained:

> "He [the attorney] assured me he would be my Zealous Advocate, which I interpret[ed] as supporting my prepared Agenda, not to create his own agenda, which it turns out was what he wanted to do.  He once emailed me that he insisted on being the "Captain of the Ship." I guess my wanting him to use my well planned narrative was damaging to his ego."

Subsection (a) of that rule identifies the requirements for the appellant's brief and provides, in pertinent part, as follows:

> The brief of the appellant shall contain under appropriate headings and in the order here indicated:
> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
> . . . .
> (4) A statement of the issues presented for review;
> (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
> (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
> (7) An argument, which may be preceded by a summary of argument, setting forth:
> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);
> (8) A short conclusion, stating the precise relief sought.

Likewise, Rule 6 of the Rules of the Court of Appeals provides, in pertinent part:

> (a) Written argument in regard to each issue on appeal shall contain:
> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
> (4) A statement of each determinative fact relied upon with citation to the record where evidence of each fact may be found.
> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the

page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

The brief submitted by Landlord fails to comply sufficiently with these rules. Although Landlord's brief contains several deficiencies, we need not recite each one. Most importantly, however, his brief fails to make appropriate references to the record[4] and to cite to relevant authority in support of his arguments. Generally, when a party fails to refer properly to the record or to cite to relevant authority, we consider that issue waived. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). This Court stated in *Newcomb v. Kohler Company*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006), that "[a] skeletal argument that is really nothing more than an assertion will not properly preserve a claim[.]" We have no duty "to verify unsupported allegations in a party's brief or to research and construct the party's argument." *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (citing *Bean*, 40 S.W.3d at 56).

We acknowledge that Rule 2 of the Tennessee Rules of Appellate Procedure allows us to waive these briefing requirements if good cause exists.[5] *Chiozza*, 315 S.W.3d at 489. But, even if we exercised our discretion and waived the briefing requirements of Tenn. R. App. P. 27, we could not overlook Landlord's failure to comply with the requirement to file a transcript or statement of the evidence pursuant to Tenn. R. App. P. 24. To determine whether the evidence introduced at trial contradicted the trial court's factual findings supporting an award of punitive damages, we must be presented with a record that adequately depicts what evidence was, in fact, introduced at trial. Therefore, it is of the utmost importance that we be provided with either a transcript of the proceedings in the trial court or a statement of the evidence that complies with Tenn. R. App. P. 24.[6] The

---

[4] Although Landlord provided a few citations to where in the record some facts could be found, he failed to provide any citation to the record for the overwhelming majority of the facts he stated in his brief.

[5] Rule 2 of the Tennessee Rules of Appellate Procedure provides, in relevant part:

> For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion . . . .

[6] Tennessee Rule of Appellate Procedure 24 provides, in pertinent part:

> (b) Except as provided in subdivision (c), if a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. . . .
> (c) If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, or if the trial court determines, in its discretion, that the cost to

appellant bears the burden of providing this Court with a transcript or statement of the evidence from which we can determine if the evidence preponderates against the trial court's factual findings. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992); *see also Greer v. Cobble*, No. E2015-01378-COA-R3-CV, 2016 WL 2898001, at *4 (Tenn. Ct. App. May 11, 2016). Landlord has failed to carry this burden. Accordingly, we do not have a fair, accurate, and complete account of what transpired with respect to the issue he raises, leaving us no way to evaluate his assertion that the evidence contradicted the trial court's findings. *See Britt v. Chambers*, No. W2006-00061-COA-R3-CV, 2007 WL 177902, at *3 (Tenn. Ct. App. Jan. 25, 2007) ("Without a transcript or statement of the evidence, the appellate court cannot know what evidence was presented to the trial court, and there is no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision."). "In the absence of a transcript of the evidence [or statement of the evidence], there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." *Coakley*, 840 S.W.2d at 370; *see also Starnes v. Diamond*, No. 7, 1990 WL 120119, at *5 (Tenn. Ct. App. Aug. 21, 1990) ("The findings of the trial court, in absence of a trial transcript, conclusively show the appropriateness for punitive damages in this case."). That is to say, "'we must conclusively presume that every fact admissible under the pleadings was found or should have been found in favor of the Appellee.'" *Chandler*, 2012 WL 2393698, at *9 (quoting *Britt*, 2007 WL 177902, at *3).

As set forth above, the circuit court made detailed findings of fact when determining that Tenants were entitled to punitive damages. Because Landlord failed to provide us with either a transcript or statement of the evidence, we must conclusively presume that every one of the facts relied on by the circuit court should have been found in favor of Tenants and that they conclusively establish that punitive damages were appropriate. We are concerned, however, with the amount of the award.

Due process's fundamental notion of fairness limits the magnitude of punitive damages awards. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). Thus, "[g]rossly excessive or arbitrary punishments" are disallowed. *Id.* at 416-17. When determining the constitutionality of a punitive damages award, courts consider three guideposts:

---

obtain the stenographic report in a civil case is beyond the financial means of the appellant or that the cost is more expensive than the matters at issue on appeal justify, and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant . . . shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal.

> The first and most important guidepost is the reprehensibility of the defendant's conduct. The . . . presence of violence, deceit, reckless disregard for the safety of others, or repeated misconduct may be aggravating factors that increase the reprehensibility of the defendant's conduct. The second guidepost is the ratio between the punitive damage award and the actual harm suffered by the plaintiff. . . . The final guidepost requires courts to compare the punitive damage award to civil or criminal penalties that could be imposed for similar conduct.

*Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 537 (Tenn. 2008) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575-76 (1996)). "[W]e conduct a de novo review of the amount of a punitive damages award to determine whether the award meets due process requirements in light of the three guideposts." *Id.* at 538.

Landlord's actions in this case were reprehensible, but the harm suffered by Tenants was purely economic (first guidepost). The unauthorized towing of Tenants' vehicle certainly inconvenienced Tenants, but it did not involve violence or indicate a reckless disregard for their safety. Furthermore, Landlord made no attempt to conceal evidence of his conduct. In regard to the second guidepost, the ratio between punitive damages ($25,000) and compensatory damages ($3,000) in this case is 1 to 8.3. There is no "strict mathematical formula" for determining the constitutionality of a punitive damages award, but the United States Supreme Court has stated that "a punitive damages award of 'more than 4 times the amount of compensatory damages' might be 'close to the line' . . . of constitutional impropriety." *Gore*, 517 U.S. at 581-82 (quoting *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23-24 (1991)); *see also Flax*, 272 S.W.3d at 537. Admittedly, the *Flax* Court considered a punitive damages award with a 1 to 5.3 ratio to be constitutional but, unlike in this case, the conduct of the defendant in that case was far more reprehensible because the defendant consciously disregarded the safety of others and attempted to cover up evidence of deficiencies in a product's design that resulted in the death of a child. *Flax*, 272 S.W.3d at 538-39. We do not believe that the first two guideposts support a ratio higher than 1 to 4 in this case.

Turning to the third guidepost, the statute that most closely expresses the General Assembly's judgment regarding the wrongfulness of Landlord's behavior is the theft of property statute codified at Tenn. Code Ann. § 39-14-103. Under that statute, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. A person convicted of that crime may be assessed a fine ranging from $50 to $50,000, depending on the value of the property stolen. Tenn. Code Ann. §§ 39-14-105, 40-35-111. For a fine of $25,000 to be warranted, the value of the stolen property must be "sixty thousand dollars ($60,000) or more but less than two hundred fifty thousand dollars ($250,000)." Tenn. Code Ann. § 39-14-105(a)(5); *see also* Tenn. Code Ann. § 40-35-111(b)(2). A review of the limited record before us reveals no

evidence relating to the value of Tenants' vehicle. Therefore, we are unable to conclude that this guidepost supports a ratio higher than 1 to 4.

In light of the foregoing, we conclude that the amount of the punitive damages award was excessive and reduce it to $12,000—a ratio of 1 to 4. *See Starnes*, 1990 WL 120119, at *7 (concluding that an award of punitive damages was conclusively presumed correct in the absence of the plaintiff's failure to file a transcript or statement of the evidence but modifying the amount of the punitive award because it was excessive).

## II. Attorney Fees.

Tenants seek an award of their attorney fees incurred defending this appeal. Litigants are generally required to pay their own attorney fees unless a statute or contract provision provides otherwise. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). According to Tenants, this appeal was frivolous so they are entitled to an award of their attorney fees under Tenn. Code Ann. § 27-1-122. That statute provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. 27-1-122. The statute "'must be interpreted and applied strictly so as not to discourage legitimate appeals.'" *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001) (quoting *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). A frivolous appeal is one that "is devoid of merit or . . . has no reasonable chance of success." *Id.* (citing *Bursack v. Wilson,* 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998); *Indus. Dev. Bd. v. Hancock,* 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). We do not find this appeal to be so devoid of merit so as to be characterized as frivolous. Thus, we decline to award Tenants their attorney fees incurred on appeal.

CONCLUSION

The judgment of the trial court is affirmed as modified. Costs of this appeal are assessed against the appellant, Wayne Akard, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE